UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARLDEN TROTTER, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | Case No. 4:13-cv-1636-JCH |
| | ) | |
| v. | ) | |
| | ) | |
| WALTER LAWSON, *et al.*, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

## PLAINTIFF'S TRIAL BRIEF

COMES NOW Plaintiff Carlden Trotter, through undersigned counsel and pursuant to the Court's April 25, 2018 Amended Case Management Order (ECF #178) as amended by the Court's August 24, 2018 Order (ECF #185), and submits his Trial Brief to the Court.

## PROCEDURAL HISTORY

Plaintiff Carlden Trotter ("Plaintiff") initiated this matter by filing his Complaint in this Court on August 19, 2013. *See* ECF #1. Plaintiff filed the operative complaint in this matter, his Third Amended Complaint ("Complaint"), on October 27, 2016. *See* ECF #131. Undersigned counsel was appointed to represent Plaintiff on April 25, 2018. ECF #177. In his Complaint, Plaintiff alleges two causes of action under 42 U.S.C. § 1983 for the violation of his constitutional rights. Both stem from an incident that occurred on February 7, 2010. Plaintiff alleges that Defendants, who were Missouri Department of Corrections officers at the time, utilized excessive force on him (i.e. they beat him after he was handcuffed) and also acted with deliberate indifference to his need for medical treatment after the assault.

**FACTUAL ISSUES**

On the morning of February 7, 2010, Plaintiff was in an altercation with Defendant Thomas in the kitchen area of Eastern Reception, Diagnostic, and Correctional Center in Bonne Terre, Missouri. Plaintiff was eventually convicted of violence or injury to others by an offender and sentenced to an additional fifteen years in prison for his actions that morning. After the altercation, Defendants arrived to take Plaintiff to the medical unit and then to Administrative Segregation, where he would thereafter be housed. Thereafter, Defendants used force on Plaintiff while he was handcuffed. It is this use of force that is at issue in this litigation.

The primary factual issues are whether Defendants' use of force proceeded in the manner in which Plaintiff alleges and whether it caused him the injuries that he was documented as having the day following the altercation. Also at issue is whether Defendants showed deliberate indifference to Plaintiff's need for medical treatment after the excessive force by placing him in a cell without access to medical care for at least twenty-four hours, and whether they knew of any injuries to Plaintiff before doing so.

**LEGAL ISSUES**

A.      **Excessive Force**

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). The Supreme Court has articulated five factors in determining whether the use of force was done maliciously: (1) the extent of injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat posed by the

inmate, and (5) the correctional officers' efforts to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7.

In this case, Defendants used excessive force maliciously to cause harm to Plaintiff. Plaintiff was restrained the entire time and was under the custody of at least four Defendants the entire time. Defendants struck Plaintiff about the face and body, caused Plaintiff's head and face to strike certain objects, and threw Plaintiff on the ground several times (and over a desk once), which caused Plaintiff's face to hit the ground (and the desk). Given Plaintiff's restraints and minimal or nonexistent physical resistance, this force was excessive, was applied maliciously and/or sadistically, and was not "applied in a good-faith effort to maintain or restore discipline." *See Santiago*, 707 F.3d at 990.

### B.    Deliberate Indifference to Plaintiff's Serious Medical Needs

To establish a claim of deliberate indifference to serious medical needs under § 1983, Plaintiff must show that he suffered from an objectively serious medical need and that Defendants actually knew of but deliberately disregarded the need. *Johnson v. Hamilton*, 452 F.3d 967, 972 (8th Cir. 2006) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Santiago*, 707 F.3d at 990 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

After beating Plaintiff, Defendants left Plaintiff alone in a cell in the Administrative Segregation unit at ERDCC, at which time Plaintiff's injuries from Defendants' use of excessive force were obvious. Plaintiff had no access to medical care or any method by which to obtain medical care during his time alone in that cell. It was only over a full day later, during the nurse's regular rounds, that Plaintiff was able to get the nurse's attention. That nurse examined him,

documented significant injuries, and directed Plaintiff to be examined by several doctors, one of whom ordered X-Rays and the other of whom documented Plaintiff's injuries. Plaintiff's injuries were in fact "diagnosed by a physician as requiring treatment," and were also "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *See Santiago*, 707 F.3d at 990.

## SUBSTANTIVE OR PROCEDURAL ISSUES

### A.    Defendant Scott McFarland's Failure to Appear for His Deposition

To date, Plaintiff has not had the opportunity to depose Defendant Scott McFarland, despite properly noticing his deposition twice. This has significant implications for the trial in this case. Defendant McFarland participated in the escort of Plaintiff from the kitchen and dining area to the medical unit and then to the administrative segregation housing unit. He is alleged to have hit Plaintiff's head against multiple objects and to have thrown Plaintiff against a closed door. Complaint (ECF #131) at 6. After both, he is alleged to have stated "oops." *Id.* In the medical unit, Defendant McFarland is alleged to have struck Plaintiff in the face while Plaintiff was handcuffed. *Id.* Defendant McFarland also spit in Plaintiff's face. *Id.* at 7. Plaintiff also alleges Defendant McFarland told him to plead guilty to assaulting Defendant Thomas, or else Defendants would "get him." *Id.*

### B.    The Security Camera Video

The Missouri Department of Corrections, through its 30(b)(6) representative, testified in its deposition as to the location of multiple security cameras at ERDCC on February 7, 2010 that would have captured at least some of the events at issue in this case. And multiple Missouri Department of Corrections employees testified in discovery that no video from those cameras was ever requested to be pulled, reviewed, or archived, despite DOC's practice to, at the minimum,

*request* video in which any use of force occurred. Such a request, per the deposition testimony of several witnesses, is made so that the "Use of Force Committee" at ERDCC can review the use of force to determine compliance with internal policy.

The events at issue in this lawsuit were determined immediately to constitute a use of force on Plaintiff. The events of the escort and altercation happened in several different areas throughout the prison. DOC witnesses have tried to explain away the fact that video was not requested, with one stating that despite his own paperwork stating otherwise, he is sure he requested video in this case. The fact that video was never requested is probative of the fact that Plaintiff was subjected to excessive force. It tends to show that it is more probable than less probable that Defendants engaged in the actions Plaintiff alleges. This is the test for relevance. *See* Fed. R. Evid. 401. The jury should hear this evidence, and Defendants are free to argue about what it means to the jury. But evidence about the lack of security camera footage in this case certainly meets the minimal standard for relevance. *See United States v. Anderson,* 783 F.3d 727, 745 (8th Cir. 2015) ("The threshold of relevance ... is quite minimal.") (quoting *United States v. Guerrero–Cortez*, 110 F.3d 647, 652 (8th Cir. 1997).

While Defendants may argue that they were not the individuals responsible for requesting any video, that fact does not make the lack of video footage evidence irrelevant. The fact that it was never requested is certainly relevant to this lawsuit.

### C.    Other Issues

Plaintiff has a limited number of issues which will be presented in his Motions in Limine that he will request be resolved prior to presenting his evidence at trial.

Dated:  November 27, 2018        Respectfully submitted,

DOWD BENNETT LLP

By:  /s/ *James B. Martin*
      James B. Martin #70219MO
      7733 Forsyth Blvd., Suite 1900
      St. Louis, Missouri 63105
      314/889-7300 (phone)
      314/863-2111 (facsimile)
      jbmartin@dowdbennett.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2018 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/s/ James B. Martin*

6